**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ILLEYSEL CARASSES MANTILLA,

Petitioner,

v. No. 2:26-cv-02561-KG-GBW

TODD BLANCHE, Attorney General of the United States et al.,

Respondents.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Illsysel Carasses Mantilla's Petition for Writ of Habeas Corpus filed August 5, 2026. Doc. 1. Respondents responded to the Petition with a Motion to Dismiss filed August 21, 2026. Doc. 8. Petitioner filed an Emergency Motion for Immediate Release ("Motion for Immediate Release") on September 21, 2026. Doc. 9. The Court has considered the arguments and exhibits presented in the Petition, Motion to Dismiss, and Motion for Immediate Release. For the reasons below, the Court denies the Petition and Motion for Immediate Release. Respondents' Motion to Dismiss is granted.

## *I. Background*

Petitioner is a native and national of Cuba. Doc. 1 at 2. He entered the United States without inspection in April 2010. *Id.*; Doc. 8-1 at 1. Following his entry, his status was adjusted to that of a lawful permanent resident. Doc. 8-1 at 1. Early in 2024, Petitioner was convicted by a jury in the United States District Court, District of Southern District of Texas, Corpus Christi Division of one count of Transportation of an Undocumented Alien, in violation of 8 U.S.C. § 1324(a)(1). Doc. 8-10 at 1. On August 7, 2024, he was sentenced to 18 months imprisonment, followed by a term of supervised release for a term of two years. Doc. 8-1 at 4; Doc. 8-10 at 1.

At sentencing, the court allowed Petitioner to self-surrender to the Bureau of Prisons to begin his term of imprisonment. Doc. 8-10 at 1.

The day he was sentenced, U.S. Border Patrol Agents working at the United States Courthouse for the Southern District of Texas in Corpus Christi, Texas, encountered Petitioner. Doc. 8 at 2; Doc. 8-2 at 2. They learned Petitioner was Cuban with Lawful Permanent Resident ("LPR") status and convicted of violating §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(II), and 1324(a)(1)(B)(ii). Doc. 8 at 2; Doc. 8-2 at 2. The Border Parol Agents arrested Petitioner due to violating LPR status requirements. Doc. 8 at 2; Doc. 8-2 at 2.

Following his arrest by Border Patrol, a warrant was issued by the Department of Homeland Security ("DHS") for Petitioner directing that he be taken into custody and removed. Doc. 8 at 2; Doc. 8-3. DHS incorrectly processed Petitioner as an Administrative Deportation matter I-851/I-851A and deported him to Mexico. Doc. 8 at 2; Doc. 8-4 at 2. On August 22, 2024, Petitioner surrendered himself into Border Parol Custody at the Hidalgo Port of Entry and was processed. Doc. 8-4 at 3. The same day, Petitioner was released on his own recognizance and advised he must report to any hearing or interview as directed by the DHS or the Executive Office for Immigration Review. Doc. 8-6 at 1.

Additionally on August 22, 2024, Petitioner was served a Notice to Appear in person, on October 10, 2024, before an immigration judge. Doc. 8 at 3; Doc. 8-7 at 1. Petitioner refused to sign the Notice to Appear. Doc. 8-7 at 1. The next day, a Notice of Custody Determination was served on Petitioner indicated he would be detained by DHS. Doc. 8-8. Petitioner refused to sign the Notice of Custody Determination. *Id.* The United States District Court, District of Southern District of Texas, Corpus Christi Division issued a warrant for Petitioner's arrest on August 28, 2024. Doc. 8-9. The court next issued an order detailing that while Petitioner was still on release

and allowed to self-surrender to Bureau of Prisons, he was instead detained by DHS and deported to Mexico. *Id.* The court noted that Petitioner was returned to the United States and remains in Immigration and Customs Enforcement ("ICE") custody. *Id.* The court vacated its previous order for self-surrender. It then issued a warrant for Petitioner's arrest and directed the United States Marshals Service to place Petitioner in custody to begin serving his sentence at Federal Correction Institution Miami. *Id.* On October 7, 2024, an immigration judge closed Petitioner's case because he was incarcerated in state custody and unable to appear. Doc. 8-12.

After Petitioner served his sentence, he was taken back into ICE custody and placed into removal proceedings due to his conviction. Doc. 1 at 3; Doc. 8-17 at 1. On August 29, 2025, Petitioner was ordered to appear before an immigration judge in El Paso, Texas on September 30, 2025. Doc. 8-11. On that date, Petitioner was personally served the Notice to Appear and refused to sign. *Id.* On December 19, 2025, notice of Petitioner's detention at Otero County was issued and Immigration & Naturalization Services Motion for Change of Venue was provided. Doc. 8-13.

On February 23, 2026, DHS issued a notice of a master in-person hearing before the immigration court on March 5, 2026. Doc. 8-15. Venue was changed to Otero Immigration Court. Doc. 1 at 20. During the hearing, the immigration judge "sustained the charge of removability and directed Cuba as the country of removal." Doc. 8-17 at 1. Petitioner admitted the facts stated in the Notice to Appear. He was provided with an I-589 application and a 42A application. The immigration court scheduled Petitioner's case for a hearing for him "to submit any application for relief from removal." *Id.* "Without prompting, the Respondent affirmatively requested that the Court order his removal." *Id.* The immigration judge "confirmed through questioning" that Petitioner "did not wish to apply for relief from removal and simply wanted to

be ordered removed." *Id.* The immigration judge ordered Petitioner's removal to Cuba on March 5, 2026. *Id.*; *see also* Doc. 1 at 21-22.

On March 9, 2026, Notice of Removal was entered, indicating ICE's intention to remove Petitioner to Mexico. Petitioner refused to sign and "verbally stated unwillingness to comply." Doc. 8-16; Doc. 8-18 at 1-2. Petitioner then filed an application for Stay of Removal. On April 2, 2026, Petitioner's application was denied. Doc. 8-17 at 1. The immigration judge concluded that Petitioner "knowingly, intelligently, and voluntarily waived his appeal rights" and there were no grounds to stay removal in the case. *Id.*

On May 13, 2026, the Enforcement and Removal Operations ("ERO") Office in Chaparral, NM scheduled Petitioner on a CVNH mission, "a United States agreement with Mexico to take Cuban, Venezuela, Nicaraguan, Haitian, citizens." Doc. 8-18 at 1. *Id*. Petitioner failed to depart from the bus at the Santa Theresa Point of Entry and enter Mexico. *Id.* Given Petitioner's refusal to enter Mexico, "ICE ERO HQ RIO has been notified so they can actively work on removal to a third country other than Mexico." *Id.*

Petitioner asserts that ICE has detained him for longer than the presumptively reasonable six-month period under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Doc. 1 at 3-4. Respondents initially argued they had not detained Petitioner for longer than the six-month period. Doc. 8 at 8. At the time of this opinion, Petitioner has been detained beyond the initial six-month period. Doc. 8; Doc. 8-18 at 1 (noting a final order of removal was entered March 5, 2026). Respondents also assert that Petitioner has not met his initial burden and has thwarted his removal. Doc. 8. Respondents attached to their Motion to Dismiss the documentation from Petitioner's 2024 conviction, his prior removal to Mexico, and the removal proceedings initiated in 2025. *See generally* Doc. 8-1 to 8-17. The declaration of ICE Deporatation Officer Paul Castro is also

included. Doc. 8-18. Petitioner's Motion for Immediate Release does not address the facts or arguments raised in Respondents' Motion to Dismiss, in particular the CVNH mission. *See* Doc. 9.

## ***II. Legal Standard***

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). Habeas corpus review is available under § 2241 if a noncitizen's detention "violat[es] the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Zadvydas*, 533 U.S. at 687.

"[T]he Government ordinarily secures [a noncitizen]'s removal during" the 90 days after a removal order becomes administratively final. *Zadvydas*, 533 U.S. at 682; *see* 8 U.S.C. § 1231(a)(1). A removal order becomes administratively final upon the earlier of either the noncitizen's waiver of the right to appeal or the expiration of the time to appeal if no appeal is filed. *See* 8 C.F.R. § 1241.1(a)–(b). During the 90-day "removal period," the noncitizen is typically detained. *Zadvydas*, 533 U.S. at 682. After that, the Government may detain the noncitizen for as long as is "reasonably necessary" to secure their removal. *Id.*

Because a statute permitting indefinite detention of a noncitizen would raise Fifth Amendment due process concerns, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Zadvydas*, 533 U.S. at 690, 699. A six-month detention period is presumptively reasonable. *Id.* After that, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government "must...rebut that showing" or release the noncitizen. *Id.* at 701. The remedy for a *Zadvydas* claim is generally release of the petitioner under conditions of supervision. *E.g.*, *Gomez v. Mattos*, 2025 WL 3101994, at *7 (D. Nev.); *Trejo v. Warden of ERO*, 2025 WL

2992187, at *10 (W.D. Tex.); *Douglas v. Baker*, 2025 WL 2997585, at *5 (D. Md.).

Post-removal detention is generally governed by § 1231(a)(2), which mandates detention "[a]fter entry of a final removal order." *Zadvydas*, 533 U.S. at 683 (citing § 1231(a)(2)). "[T]he Government ordinarily secures" a noncitizen's removal during the 90-day removal period, during which the noncitizen is typically detained. *Zadvydas*, 533 U.S. at 682; *see* § 1231(a)(1). After that, the Government may continue detaining the noncitizen only for as long as is "reasonably necessary" to secure their removal. *Zadvydas*, 533 U.S. at 682. A six-month detention period is presumptively reasonable. *Id.* at 701. The removal period may be extended and "the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." § 1231(a)(1)(C).

***III. Analysis***

As an initial matter, Petitioner asserts in his Motion for Immediate Release that "[n]o third world country has agreed or is willing to accept Petitioner for removal." Doc 9 at 1. This is contradicted by the May 13, 2026 CVNH mission. *See* Doc. 8-18 at 1. The record before the Court instead demonstrates the 90-day removal period has been extended due to Petitioner's actions to impede his removal.

"After entry of a final removal order and during the 90-day removal period . . . aliens must be held in custody." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2)). Custody of an alien under a final order of removal for more than six months is presumed unreasonable if the alien provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Section 1231, however, extends the removal period beyond 90 days in certain circumstances. A noncitizen may remain in detention beyond 90 days

if the noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure *or conspires or acts to prevent the alien's removal subject to an order of removal*." § 1231(a)(1)(C) (emphasis added). Given this statutory language, courts have concluded that the "risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019) (citation modified) (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003).

The order of removal in this case became final on March 5, 2026. Petitioner voluntarily requested removal and waived his appeal rights. He did not submit an application for relief from removal nor did he make any argument in opposition to removal. Doc. 8-17 at 1; Doc. 1 at 21. Within the 90-day period following the final order of removal, ICE attempted to remove Petitioner to Mexico. Doc. 8-18 at 1. It is undisputed that Petitioner verbally stated unwillingness to comply and refused to sign the Notice of Removal to Mexico and failed to depart from the bus at the Santa Theresa Point of Entry and enter Mexico on May 13, 2026. Petitioner therefore impeded Respondents' efforts to remove him. *See Perez v. Blanche*, No. 2:26-cv-01588-MIS-KRS, 2026 WL 1587336, at *1 (D.N.M. June 3, 2026) (concluding that petitioner remained subject to mandatory detention where he acted to prevent his removal by refusing to board a bus to Mexico); *Alhadje v. Guadian*, No. 1:25-cv-04153-CNS, 2026 WL 783726, at *1 (D. Colo. Mar. 20, 2026) (denying petition when petitioner refused to board a flight booked for removal). The Court concludes that Petitioner has "act[ed] to prevent" his removal under § 1231(a)(1)(C).

Accordingly, the removal period has been extended pursuant to § 1231(a)(1)(C)—the six-month period has not expired, and Petitioner's detention remains presumptively reasonable.

Petitioner may file a new petition if he demonstrates that he has cooperated with the Respondents' efforts to effectuate his removal and nevertheless remains detained.

## *IV. Conclusion*

For the reasons above, the Court denies the Petition for a Writ of Habeas Corpus, Doc. 1, and the Emergency Motion for Immediate Release, Doc. 9. Respondents' Motion to Dismiss is granted. Petitioner may refile another petition in the future if his status changes.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales____________________
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.